UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| KRAUSZ INDUSTRIES, LTD., *formerly known as* KRAUSZ METAL INDUSTRIES, LTD., | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:17-mc-00015-SLC |
| SMITH-BLAIR, INC., *et al.*, | ) ) | |
| Defendants. | ) ) | |

**OPINION AND ORDER**

Before the Court is a motion to compel filed by Defendants Sensus USA, Inc. ("Sensus"), and Smith-Blair, Inc. ("Smith-Blair") (together, "Defendants") (DE 1), who seek to compel non-party The Ford Meter Box Company, Inc. ("Ford Meter Box"), to produce documents pursuant to a subpoena. The underlying action is pending in the United States District Court for the Eastern District of North Carolina, cause number 5:12-CV-570-FL, and this matter is before the Court only regarding Defendants' motion to compel production pursuant to a subpoena they served on Ford Meter Box, which is located in this district. Ford Meter Box filed a response in opposition to the motion to compel (DE 7), and Defendants filed a reply brief (DE 11). This matter is now fully briefed and ripe for adjudication.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In the underlying action in the United States District Court for the Eastern District of North Carolina, Plaintiff Krausz Industries, Ltd. ("Krausz"), sued Defendants for allegedly violating a patent held by Krausz. (DE 2-2). Krausz alleges in its amended complaint that Defendants have manufactured, marketed, and sold a competing pipe coupling that infringes on

Krausz's patent. (DE 2-2). Discovery has apparently been ongoing in the underlying action, and is nearing completion. (DE 2 at 3). During the discovery process, Krausz informed Defendants that it may be seeking lost profits as part of its damages; given the statements and information provided during discovery by Krausz, Defendants believe that Krausz will be seeking to recover lost profits based upon a calculation of its share of the relevant product market. (DE 2 at 3).

In order to obtain information necessary to determine Krausz's market share, Defendants issued subpoenas to the other competitors in the United States pipe coupling market, requesting information regarding the number of pipe couplings sold by each competitor during the time period at issue in the underlying action. (DE 2 at 3). Defendants represent that Ford Meter Box and other participants in the pipe coupling market are privately held, so their sales information is not publicly available. (DE 2 at 3).

Regarding the subpoena issued to Ford Meter Box on March 14, 2017, Defendants' first request asked for documents showing "how many units of each of the following products [Ford Meter Box] sold in the United States per calendar year from 2011 through 2016 (inclusive): (a) FC3; (b) FC4; (c) FLC; (d) FC5; (e) FC6; (f) FC1; (g) FC2A; (h) FRC; (i) FC2W; and (j) FC2W-12," for "couplings sizes from 2" through 12" oversize." (DE 2-1 at 4). The subpoena's second request asks that if Ford Meter Box "sold any other wide-range non-restraining coupling in the United States during 2011 through 2016 (inclusive) that is not listed in Request No. 1, please produce documents sufficient to show how many units of each of those products you sold in the United States per calendar year from 2011 through 2016 (inclusive)," and notes that the request is only seeking information regarding "couplings sizes 2" through 12" oversize." (DE 2-1 at 4). The subpoena's third and last request asks that if Ford Meter Box "sold any other stab-fit, non-

2

compression coupling in the United States during 2011 through 2016 (inclusive) that is not covered by Request No. 1 or Request No. 2, please produce documents sufficient to show how many units of each of those products you sold in the United States per calendar year from 2011 through 2016 (inclusive)," and noted that the third request only seeks information regarding "couplings sizes 2" through 12" oversize."  (DE 2-1 at 4).  Defendants' counsel sent the subpoena to Ford Meter Box with a letter explaining that the subpoena was requesting the information because it was necessary for Defendants to obtain information about the pipe coupling market in the United States.  (DE 2-3).  The letter also explained to Ford Meter Box that it could designate documents responsive to the subpoena as "HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" under the protective order in force in the case, and such documents would not be shared with personnel at Smith-Blair, Sensus USA, or Krausz. (DE 2-3).  Additionally, the letter explained that Ford Meter Box could produce the responsive documents at a location in Ford Meter Box's area, or could send the documents to Defendants' counsel by mail or email; Defendants' counsel also indicated that Ford Meter Box could respond with individual documents or a spreadsheet, whichever was more convenient for Ford Meter Box.  (DE 2-3).

On March 23, 2017, Ford Meter Box responded with a written objection and refused to provide any of the information sought through the subpoena.  (DE 2-4).  Ford Meter Box objected on grounds that the requests were overly broad, unduly burdensome and expensive, did not explain the relevance of the requested information to the underlying lawsuit, did not explain what alternative means have been taken to procure the information without burdening a non-

3

party, and sought proprietary and confidential information without any assurances that such information would stay confidential. (DE 2-4).

Thereafter, Defendants' counsel reached out to Ford Meter Box's counsel by telephone in an attempt to resolve the dispute. (DE 2 at 4). Counsel were unable to reach agreement, however, so Defendants filed the instant motion to compel on April 21, 2017, which was the deadline for discovery motions in the underlying action. (DE 2 at 4-5). While the parties continued to engage in discussions to resolve the dispute after the motion was filed, they were unable to reach an agreement. (DE 11 at 1-2).

## II. LAW & ANALYSIS

Federal Rule of Civil Procedure 45 provides, in pertinent part, that "[e]very subpoena must . . . command each person to whom it is directed to . . . produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control . . . ." Fed. R. Civ. P. 45(a)(1)(A). Such a subpoena "requires the responding person to permit inspection, copying, testing, or sampling of the materials." Fed. R. Civ. P. 45(a)(1)(D). "Subpoenas may be issued to non-parties pursuant to Rule 45, but that non-party may move to quash the subpoena for reasons set forth in [the Rule]." *Ott v. City of Milwaukee*, 274 F.R.D. 238, 239 (E.D. Wis. 2011). These reasons include subpoenas that "fail[] to allow for a reasonable time to comply," "require[] a person to comply beyond the geographical limits" specified by the Rule, "require[] disclosure of privileged or other protected matter, if no exception or waiver applies," or "subject[] a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

4

"[I]t has been consistently held that 'non-party' status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013) (citation omitted). "[W]hile parties must accept the burdens of litigation, non-parties have different expectations" and, "[a]s such, courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs." *Id.* To determine whether a subpoena subjects its recipient to undue burden, courts consider "the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the documents, the breadth of the request and the burden imposed on the subpoenaed party." *Id.* (citations omitted).

Here, Ford Meter Box is a non-party to this lawsuit, and thus has an expectation that it will not be subjected to the same discovery burdens as a party to a lawsuit. However, Ford Meter Box appears to be the only source from which Defendants may obtain the information requested in the subpoena, as Ford Meter Box is a privately held company. The information sought by Defendants appears to be relevant and necessary for the underlying action, as Defendants will be unable to determine what Krausz's share of the U.S. pipe fitting market is until Defendants can determine what total market sales are. Without the information regarding Ford Meter Box's sales of pipe fittings in the United States during the relevant time period, neither Defendants nor Krausz will be able to determine what total market sales are, and without total market sales, Krausz's market share cannot be determined.

While Ford Meter Box argues that Defendants have stated that it is only a possibility that Krausz will seek to recover lost profits on a market share theory, and Ford Meter Box contends that as a non-party, it should not be required to "produce confidential information under such

5

speculative circumstances" (DE 7 at 3), this argument is unpersuasive. The discovery period in the underlying action is ending, and Defendants must conduct their discovery efforts prior to the close of discovery. Defendants have issued "five virtually identical subpoenas" to "participants in the U.S. pipe coupling market to obtain information needed to defend against Krausz's lost profit claim," and the four other subpoena recipients agreed to provide the information responsive to the subpoena, with the confidentiality provisions provided in the protective order. (DE 11 at 3). Only Ford Meter Box has refused to provide the information, and without the information from Ford Meter Box, Defendants will not be able to determine the total market's numbers for pipe couplings. It is apparent that the information Defendants have sought from Ford Meter Box is essential to Defendants' preparation of their defense now, as they will not be permitted to take additional discovery later in the case after Krausz makes certain what method of damages it is using in this case.

Ford Meter Box also argues that it will be unduly burdensome to respond to the subpoena, because some of the older information will need to be accessed from "archive storage" while more recent information is apparently stored in a different system; that Ford Meter Box will need to "sort" and "extract" the different categories of couplings for the different years; and because Ford Meter Box apparently does not keep track of its sales for the United States separately from its foreign sales. (DE 7 at 5). Additionally, Ford Meter Box contends that it will have to take an inventory of its stock in order to produce answers to the subpoena. (DE 7 at 5). Ford Meter Box states that responding to the subpoena will disrupt its day-to-day activities and will mean less time that its employees can spend working to compete against its competitors. Ford Meter Box's arguments regarding the subpoena's burdensomeness are also unavailing. It

seems unlikely to the Court that Ford Meter Box does not have data on the sales of its products, and the fact that it may have to access both its old system and its new system to obtain the necessary information does not outweigh the fact that Defendants cannot obtain this information elsewhere. Ford Meter Box can provide the information to Defendants in the form that it is currently stored, or they can provide the information to Defendants in spreadsheet form. Given that all of the other competitors in the U.S. pipe coupling market have been able to produce this information to Defendants, the Court is unconvinced that Ford Meter Box is unable to do so, or that producing the information would be overly burdensome.

Ford Meter Box also argues that Defendants have not shown that Ford Meter Box's confidential information will remain confidential, including at trial. Ford Meter Box further contends that it has not been provided assurances that materials designated as attorneys' eyes only will remain as such, or that Krausz will not challenge such designations. Ford Meter Box can sign on to the protective order in the case and make its designations such that only outside counsel will have access to the documents and information it provides. Defendants attached the protective order to their memorandum in support of their motion (DE 2-6), and the protective order explains the process by which a party could challenge a designation. The challenging party would be required to notify and confer with the designating party (DE 2-6 ¶ 6), and thus Ford Meter Box would be made aware if any party, including Krausz, were to challenge the designation of a document it provided as attorneys' eyes only. The use of confidential material at trial "shall be governed by a separate agreement or order." (DE 2-6 ¶ 3). Thus, the parties will have to comply with another protective order approved by the Court when using confidential materials at trial. Defendants' counsel have shown that they will maintain the confidentiality of

information produced by Ford Meter Box under the specific protections provided by the protective order in the underlying action.

### III. CONCLUSION

For these reasons, I conclude that the information requested from Ford Meter Box by Defendants in the subpoena is necessary and relevant to the underlying action. Producing the information will not be unduly burdensome to Ford Meter Box, and Ford Meter Box may designate its information as confidential under the protective order in the underlying action. Accordingly, Defendants' motion to compel (DE 1) is GRANTED. Ford Meter Box is ORDERED to provide the documents and information responsive to the subpoena to Defendants on or before July 14, 2017.

Because this Order resolves this matter, the Clerk is DIRECTED to close the case.

SO ORDERED.

Entered this 30th day of June 2017.

/s/ Susan Collins
Susan Collins,
United States Magistrate Judge